Filed 6/15/16  Paul G. v. Superior Court CA2/6

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| PAUL G.,<br><br>    Petitioner,<br><br>v.<br><br>THE SUPERIOR COURT OF SAN LUIS OBISPO COUNTY,<br><br>    Respondent;<br><br>SAN LUIS OBISPO COUNTY DEPARTMENT OF SOCIAL SERVICES,<br><br>    Real Party in Interest. | 2d Juv. No. B270222<br>(Super. Ct. No. 14JV00377)<br>(San Luis Obispo County) |

Paul G. (Father) challenges an order of the juvenile court terminating reunification services and setting a hearing to select a permanent plan for his son, Z., pursuant to Welfare and Institutions Code section 366.26.[1]  Father contends there is no substantial evidence that the San Luis Obispo Department of Social Services (Department) made active efforts to prevent the breakup of this Indian family.  (§ 361.7, subd. (a).)  We deny his petition for extraordinary relief.

---

[1] All statutory references are to the Welfare and Institutions Code unless otherwise stated.

BACKGROUND

The Department removed Z. from his parents' care in October 2014 after he witnessed Father's third heroin overdose in three months. Z. was three years old. At the time, Father lived on Navajoa Avenue.

The court ordered Z. detained. It declared Father to be the presumed father and ordered weekly supervised visits for both parents.[2] At the detention hearing, Father reported possible Indian heritage. Father's counsel gave notice of Father's new legally designated mailing address: a post office box in Atascadero. At the jurisdiction and disposition hearing in December 2014, the trial court found by clear and convincing evidence the child could not safely be left in the care of either parent. (§ 361, subd. (c)(1).) It ordered placement with a foster family and reunification services to both parents, with a reunification goal of December 2015. It continued weekly supervised visits.

Father's case plan included substance abuse outpatient treatment and drug testing, parenting classes, and a domestic violence program. Over the course of a year, he completed the parenting program but did not complete drug treatment, did not provide any negative drug tests, and did not participate in a domestic violence program.

In the first two months of reunification services, Father consistently attended drug and alcohol treatment meetings, but concerns were expressed about his "poor behavior" in the sessions. He met with the drug counselor to address this issue. Father did not believe he needed domestic violence counseling. The Department urged him to begin it.

In March 2015,[3] the San Pasqual Band of Mission Indians reported that Z. is a descendent of that tribe (the Tribe) through his paternal grandfather. In March, the Department discussed with tribal representatives possible services and placement. In April, the Department sent a letter to the Indian Health Council asking whether there were any additional resources the Tribe would recommend for Father, whether there were

---

[2] Mother is not a party to this petition for extraordinary writ.

[3] All dates are in the year 2015 unless otherwise indicated.

2

any resources supported by the Tribe near San Luis Obispo County, and whether there were any providers used to working with tribal communities in the areas of domestic violence, parenting education, substance abuse, and self-care. The Tribe did not have any local resources, but provided input on the reunification services and a tribal social worker helped the parents understand the reunification process. The Tribe agreed with Z.'s foster placement.

In May, the Department reported that Father had progressed little on his case plan. He was not in compliance with substance abuse treatment or domestic violence counseling. He was discharged from a drug treatment program because of "disruption of group dynamics, triggering of participants, missing scheduled intake of [Family Treatment Court], lack of participation, and lack of insight to substance related issues." He was continuing to test positive for Suboxone. The program required a psychological examination as a condition of readmission. Father did not consent to the examination.

In June, the Department reported that Father had not undergone a psychological evaluation. Father stated that in his opinion it was not necessary. His Department caseworker met with him and explained that he needed to comply with the drug treatment requirements. Father had not participated in treatment since his discharge from treatment for noncompliance in March. Father consistently missed drug tests or tested positive for Suboxone. He had a prescription for Suboxone, but his caseworker explained that he needed a titration plan or a statement of medical necessity from his doctor; otherwise, the tests would be considered "dirty." Father did not obtain either. The caseworker sent letters to Father about his noncompliance, but he no longer lived at the Navajoa Avenue address.

Before the six-month review hearing in July, the Tribe enrolled Z. as a member. At the hearing, an Indian expert witness opined by declaration that the Department made active efforts to provide services and rehabilitative programs designed to prevent the breakup of this Indian family. The parties stipulated in writing that the court could accept the declaration in lieu of testimony, except for one paragraph in which

3

the expert recommended drug and alcohol treatment for both parents. The trial court found by clear and convincing evidence that "active efforts were made to provide remedial services and rehabilitative programs designed to prevent the breakup of this Indian family, and these efforts were unsuccessful." It found that Father's progress toward reunification was minimal. It continued reunification services and set the matter for a 12-month review hearing in December.

Father's caseworker met with him in August about his noncompliance with drug treatment. He was still not participating in drug treatment. She suggested that he speak with his medical doctor about individual drug treatment counseling. Father missed two visits with Z. in August.

In October, Father underwent a psychological evaluation, but the drug treatment program would not accept him for reentry because of safety concerns. Although his caseworker had suggested individual drug treatment counseling, he did not pursue this option.

In October and November, the caseworker arranged for Father to obtain drug and alcohol treatment in San Luis Obispo, at a new site where he had no negative history, but he did not respond to messages with this information and did not appear for the walk-in assessment she arranged. In more than 50 scheduled drug tests between December 2014 and October 2015, Father did not produce one negative test, refused to test or failed to appear 17 times, and submitted one diluted sample. On three occasions he was removed from testing for failing to appear three consecutive times. Father missed several visits with Z. and was not in consistent contact with the Department. His caseworker tried to contact him by telephone and e-mail, with copies to his attorney, but he did not respond. She previously explained to him that his case plan required him to stay in contact with the Department.

In December, the Department recommended the court terminate reunification services to both parents. Father resumed contact with the Department. He agreed to participate in individual drug treatment counseling and testing at the San Luis Obispo site, but he provided a diluted urine sample at his initial assessment and was

4

excluded from the program again in January when he did not appear for therapy sessions or subsequent drug tests. He missed four visits with Z. in December.

At the 12-month review hearing on January 29, 2016, the court took judicial notice of the Department's reports. The Indian expert testified about the Department's coordinated efforts with the Tribe to reunify Father and Z. Father's caseworker also testified.

On February 3, 2016, the trial court terminated reunification services and set the matter for a hearing in June 2016 to select a permanent plan for Z. It found the Department provided reasonable services but there was no substantial probability that Z. would be returned to his parents' custody if services were extended beyond 12 months. (§ 361.5, subd. (a)(1)(A) & (3).) It decided by clear and convincing evidence that "active efforts were made to provide remedial services and rehabilitative programs designed to prevent the breakup of this Indian family, and these efforts were unsuccessful." It found the confusion over Father's mailing address was harmless because he had actual notice of his case plan and noncompliance.

DISCUSSION

*Forfeiture*

The Department contends that Father forfeited his right to challenge the active efforts finding at the six-month review hearing when he stipulated to the admissibility of the expert's declaration, offered no contrary evidence, and did not object to or challenge the finding. (Civ. Code, § 3516.) We agree he forfeited his right to challenge the six-month finding, but his petition challenges the Department's efforts after the six-month review. Active efforts are required throughout the reunification period. (*In re Michael G.* (1998) 63 Cal.App.4th 700, 715-716 [insufficient evidence of active efforts where agency provided no services after six-month review hearing].) We review Father's appeal on the merits. (See § 366.26, subd. (l)(4)(B).)

*Active Efforts*

Before parental rights over an Indian child may be terminated, evidence must be presented that "active efforts have been made to provide remedial services and

5

rehabilitative programs designed to prevent the breakup of the Indian family and that these efforts have proved unsuccessful." (§ 361.7, subd. (a); 25 U.S.C. § 1912(d).) The court may not order foster care placement unless it finds by clear and convincing evidence, including expert testimony, that continued parental custody is likely to result in serious emotional or physical damage to the child. (§ 361.7, subd. (c); 25 U.S.C. § 1912(e) & (f).)

We review the trial court's finding for substantial evidence, viewing the record in the light most favorable to the judgment and upholding the trial court's finding unless it can be said no rational trier of fact could reach the same conclusion. (*C.F. v. Superior Court* (2014) 230 Cal.App.4th 227, 239.)

The facts of the case determine the particular services required. (§ 361.7, subd. (b).) "Active efforts" must take "into account the prevailing social and cultural values, conditions, and way of life of the Indian child's tribe," using "the available resources of the Indian child's extended family, tribe, tribal and other Indian social service agencies, and individual Indian caregiver service providers." (*Ibid.*) In contrast, "passive efforts" entail drawing up a plan and leaving the client to develop his or her own resources towards bringing it to fruition. (*In re K.B.* (2009) 173 Cal.App.4th 1275, 1287.)

Active efforts must include "pursuit of any steps necessary to secure tribal membership" for an eligible child and "attempts to use the available resources" of extended family members, the tribe, tribal and other Indian social service agencies and caregivers. (Cal. Rules of Court, rule 5.484(c)(2).) As in all cases, reunification services must be designed to remedy the problem that led to removal. (*In re Michael G.*, *supra*, 63 Cal.App.4th at p. 713.) The agency must provide suitable services regardless of difficulty or the prospects of success. (*In re Dino E.* (1992) 6 Cal.App.4th 1768, 1777.)

The Department actively took Father through each step of his case plan and provided the resources he needed to succeed. The Department offered parental and domestic violence education, individual therapy, substance abuse treatment, and drug testing, all of which were designed to remedy the problem that led to removal. When his

6

behavior in drug treatment led to his exclusion, the Department provided alternative treatment at another location.  Father went to one intake session there but provided a diluted urine sample and never returned.  In 15 months of drug testing, Father never provided a "clean" urine sample.  Father completed the parenting course, but did not participate in the domestic violence program the Department offered, despite reminders and encouragement from the Department.  Father's caseworker collaborated with the Tribe.  When Father stopped communicating with her, she made many efforts to contact him by telephone and e-mail.

Father contends there is no substantial evidence of active efforts because the Department corresponded with him at the wrong address, did not offer services recommended by the Tribe, and made no effort to connect him with the Tribe.  We disagree.

*Correspondence*

The Department sent its November 2014 report, an ICWA notice, one letter concerning the visitation schedule, and seven noncompliance letters to the wrong address.  Substantial evidence supports the trial court's finding that the erroneous mailings were "essentially harmless as the [Father] had adequate notice of the issues before the court and the concerns the Department had regarding the case plan issues."  (See, e.g., *In re Ryan R.* (2004) 122 Cal.App.4th 595, 599 [no prejudice where trial court mailed advisement of appellate rights to incorrect address but it appeared mother was actually aware of her appellate rights].)

Father received most of the noncompliance letters as attachments to reports the Department sent to his correct address in June, September, and November 2015.  Father contends he "lost critical months," but he received these reports long before the court terminated services in February 2016.  He told the court in May 2015 that he was familiar with his case plan.  He acknowledged the Department's concerns about noncompliance at the same time.  His caseworker met with him regularly to discuss his case plan, treatment alternatives, and concerns about his noncompliance.  She personally explained to him in June and August 2015 the need to follow his case plan, participate in

7

testing, and complete drug treatment. She explained that his treatment program required a psychological evaluation for reentry. He eventually stopped responding to her voicemail messages. The trial court warned him at the six-month review hearing that it was his responsibility to access voicemail.

*Recommended Services*

Father contends the Department's efforts were not active because it did not offer services recommended by the Tribe and others. But the Department offered recommended services to the extent they were available and appropriate.

At the six-month review hearing the Indian expert said that she would like to see Father participate in "play therapy." Play therapy was often available as part of the drug and alcohol program, but Father did not participate in the program. At the same hearing, the Department's counsel commented that Family Treatment Therapy would be an "excellent forum for [Father,]" but, "in order to access that . . . he does need to go to drug and alcohol and cooperate with their service." He did not.

In September 2015, a drug treatment counselor recommended Dr. Gannon and Star Drug Testing as alternative drug treatment providers. But Dr. Gannon did not provide drug testing and Star Drug Testing did not meet the Department's standards because they do not observe drug tests. The Department offered a viable alternative. The caseworker arranged for Father to attend drug treatment in San Luis Obispo, but Father did not follow through. He was discharged when he did not appear for testing or appointments.

*Efforts to Connect Father with the Tribe*

Father contends the Department did nothing to take into account the values, conditions, and way of life of the Tribe. There is substantial evidence to the contrary.

The Department successfully secured Z.'s membership in the Tribe. The Tribe participated in each hearing telephonically. The Department asked the Tribe for input about reunification services that would take into account tribal social and cultural values. The Department was required to use all available tribal resources, but no tribal services were available in San Luis Obispo. The expert testified at the 12-month review

8

hearing that the Tribe has resources in San Diego, including seasonal gatherings and fiestas which it lists in a flyer, but there were none in the past six months. She said, "because of the geographical distance, we really didn't have anything to support him on other than looking into his tribal lineage and looking for family." The Department was required to offer only "available" tribal resources. (§ 361.7, subd. (b); Cal. Rules of Court, rule 5.484(c)(2).) It did so.

We deny the petition for extraordinary writ. The request for a stay of proceedings is denied.

NOT TO BE PUBLISHED.


TANGEMAN, J.

We concur:


GILBERT, P. J.


PERREN, J.


9

Linda D. Hurst, Judge

Superior Court County of San Luis Obispo

_____

Theresa G. Klein, for Petitioner.

No appearance for Respondent.

Rita L. Neal, County Counsel, and Leslie H. Kraut, Senior Deputy County Counsel, for Real Party in Interest.